**C.A. No. 09-10139**

D. Ct. No. CR 07-1207-TUC-RCC

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

HOWARD WESLEY COTTERMAN,

Defendant-Appellee.

————

ON APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

------------------------------------------------------------
**REPLY BRIEF OF APPELLANT**
------------------------------------------------------------

DENNIS K. BURKE                     CARMEN F. CORBIN
United States Attorney              Assistant U.S. Attorney
District of Arizona                 405 West Congress, Suite 4800
                                    Tucson, Arizona 85701
CHRISTINA M. CABANILLAS             Telephone: (520) 620-7300
Appellate Chief                     Attorneys for Appellant


Date Electronically Filed:  February 19, 2010

# I.  <u>TABLE OF CONTENTS</u>

Page

I.   Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

II.   Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

III.   Argument

The District Court Erred When It Suppressed The Child
Pornography Evidence Found On The Defendant's Laptop
Computer, And The Defendant's Contrary Arguments Are
Without Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV.   Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

V.   Certificate of Compliance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

VI.   Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

i

## II.  <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Alexander v. United States*,
   362 F.2d 379 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Almeida-Sanchez v.  United States* ,
   413 U.S. 266 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Blefare v. United States*,
   362 F.2d 870 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Heidy v.United States Customs Service*,
   681 F. Supp. 1445 (C.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Imperial Pkg Corp. v. United States*,
   535 F.Supp. 688 (Ct. Int'l Trade 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Michigan Dep't of State Police v. Sitz*,
   496 U.S. 444 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tabbaa v. Chertoff*,
   509 F.3d 89 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Torres v. Puerto Rico*,
   442 U.S. 465 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Abbouchi*,
   502 F.3d 850 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 11, 15

*United States v. Alfonso*,
   759 F.2d 728 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 17

*United States v. Arnold*,
   523 F.3d 941 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 14-16, 18, 21, 22

*United States v. Bennett*,
363 F.3d 947 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Caminos*,
770 F.2d 361 (3d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Castillo-Garcia*,
424 F.2d 482 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Cortez-Rocha*,
394 F.3d 1115 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*United States v. Flores-Montano*,
541 U.S. 149 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 20

*United States v. Gallagher*,
557 F.2d 1041 (4th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Gonzalez-Rincon*,
36 F.3d 859 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Guzman-Padilla*,
573 F.3d 865 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Hernandez*,
424 F.3d 1056 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Hill*,
459 F.3d 966 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Ickes*,
393 F.3d 501 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Laich*,
2010 WL 259041 (E.D. Mich. Jan. 20, 2010). . . . . . . . . . . . . . . . . . . . . 11

*United States v. Martinez-Fuerte*,
  428 U.S. 543 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Montoya de Hernandez*,
  473 U.S. 531 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15-18

*United States v. Puig*,
  810 F.2d 1085 (11th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

*United States v. Ramsey,*
  431 U.S. 606 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Ross,*
  456 U.S. 798 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Seljan,*
  547 F.3d 993 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Vance*,
  62 F.3d 1152 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## **STATUTES**

19 U.S.C. § 1202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19 U.S.C. § 1496a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## **MISCELLANEOUS**

19 C.F.R. Part 113. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

iv

### III.  ARGUMENT

### THE DISTRICT COURT ERRED WHEN IT SUPPRESSED THE CHILD PORNOGRAPHY EVIDENCE FOUND ON THE DEFENDANT'S LAPTOP COMPUTER, AND THE DEFENDANT'S CONTRARY ARGUMENTS ARE WITHOUT MERIT.

As stated in the opening brief, the district court's ruling was erroneous because the forensic examination of the computer constituted a border search and thus, did not require reasonable suspicion.  The forensic analyst's examination of the defendant's laptop was simply a continuation of the lawful border search initiated at the border and did not implicate any heightened expectation of privacy.  (Op. Br. at 14.)

In his answering brief, the defendant argues that Customs' more thorough examination of the laptop away from the border was an extended border search requiring reasonable suspicion, and that the search was unreasonable under the Fourth Amendment.  Because the search was a lawful border search, however, it was reasonable.  There was no extended border search because Customs had not cleared the laptop for entry into the United States and then searched it inside the country after doing so.  Rather, Customs conducted one lawful continuous border search of that item, not "two searches" requiring separate justification, as the defendant contends. The defendant's "least restrictive alternative" arguments are legally irrelevant under this Court's case law.  The search was conducted reasonably, as the district court

1

specifically found. Finally, the rule that the defendant encourages this Court to adopt simply is not mandated by the Fourth Amendment and would severely hamper the government's ability to fulfill its statutory duty to protect the borders of the United States, particularly where an item may require further testing or examination to ascertain its contents.

The child pornography on the defendant's computer was discovered during a lawful border search. The district court's suppression order should be reversed.

A.    The Defendant's "Less Restrictive Means" Arguments Are Unavailing.

The defendant dedicates considerable ink to arguing that the border search was unlawful because: 1) computer examiner Owen could have driven to the border to conduct the forensic search of the defendant's laptop computer and achieved the same results (Ans. Br. at 26-29, 59); and 2) border Customs agents inexperienced at computer searches could have asked the defendant for his help in accessing the password protected files and could have found the child pornography without Owen's help. (Ans. Br. at 27-28, 57-59.) However, these arguments can be reduced to one argument – that the government did not use the least restrictive means to accomplish the border search of his computer, so the border search was not lawful. This argument is foreclosed by precedent.

2

Whether Customs could have searched the computer in a different manner is not relevant to whether the search was a border search, nor does it make the search of the defendant's laptop unreasonable. The Supreme Court and this Court have declined to apply a least restrictive means analysis to border searches, recognizing the broad responsibilities of Customs officers at the Nation's borders and their legitimate law enforcement objectives. *United States v. Arnold*, 523 F.3d 941, 946 (9th Cir. 2008) (as amended on denial of rehearing), *cert. denied*, 129 S. Ct. 1312 (Feb. 23, 2009) ("we have expressly repudiated this type of 'least restrictive means test' in the border search context") (citing *United States v. Cortez-Rocha*, 394 F.3d 1115, 1123 (9th Cir. 2005); *United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) (the mere fact that there were less intrusive ways to accomplish the objective would not necessarily render the search unreasonable); *United States v. Martinez-Fuerte*, 428 U.S. 543, 557 n.12 (1976) ("The logic of such elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers.").

In short, "for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers." *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444,

3

453-54 (1990). Thus, Customs had the discretion to decide how best to execute its duty to examine the defendant's laptop computer under its border search authority before releasing that computer into the United States. After Customs agents discovered password-protected files on the defendant's computer, it was quite reasonable to give the computer to a computer expert to complete the border search. That expert was not required under the Fourth Amendment to come to the border (as opposed to using his off-site equipment) in order for the examination to remain a border search. "Despite its name, a border search need not take place at the actual international border." *United States v. Abbouchi*, 502 F.3d 850, 855 (9th Cir. 2007).

As noted in the government's opening brief, in *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006), this Court refused to suppress evidence discovered in an off-site search based on the argument that police could have done a similar on-site search of the suspect's computer. The defendant argues *Hill* is inapplicable because *Hill* focused on taking "forensic equipment to [a] home," as opposed to here, where the equipment would have been taken to a remote port of entry.[1] (Ans. Br. at 29.) *Hill*, however, is directly applicable. *Hill*, 459 F.3d at 974. This Court in *Hill* rejected the notion that the officers could have brought their own computer, noting the

---

[1] In making this comparison, the defendant states that the port of entry in Lukeville is "a much more controlled and predictable environment than a suspect's home." (Ans. Br. at 29.) There is no record support for this assertion.

4

exceptional burdens this would place on law enforcement to have proper equipment available, the potential risk of data corruption in an on-site search, and the fact that an on-site search could take an extended period of time, substantially interfering with the suspect's Fourth Amendment right to have the intrusion limited as much as possible. *Hill*, 459 F.3d at 974-75.

Even if this Court were to accept the defendant's invitation to disregard this precedent and consider whether least restrictive alternatives were employed in this case, the defendant's arguments are nonetheless without merit. For example, he argues that, once the Customs agents found password protected files on his computer, they should have simply "asked" him for the password and that it was "unreasonable" for the government not to do so. (Ans. Br. at 57.) This argument not only presupposes that the defendant would have willingly helped Customs locate the child pornography located on his computer, but that all of the contraband on the computer would have been readily accessible with such passwords.

5

The first assumption is improbable,[2] and the second ignores that significant amounts of child pornography were found in unallocated space on the defendant's computer and therefore, as the defendant states, were "probably not accessible to the computer's owner." (Ans. Br. at 59.) Moreover, Agent Riley reasonably believed that soliciting the defendant's assistance would give the defendant an opportunity to delete files from his computer and there was a chance it could be "booby-trapped." (CR 55; RT 8/27/08 38-39, 50; ER 91-92, 103.) Such deletions could have occurred without the government's knowledge, notwithstanding the defendant's assumption that any deletion would be readily apparent. (Ans. Br. at 59.) Indeed, even the defendant acknowledges that there is at least an "off-chance possibility" that he could have irrevocably deleted files from his computer if the government had asked him to help with the search. (Ans. Br. at 59.) In short, the government was not constitutionally obligated to seek the defendant's help before giving the computer to Owen to complete the border search. An otherwise lawful border search does not become unreasonable simply because the government did not first seek the target's

---

[2] In fact, when the laptop was being forensically examined in Tucson, Agent Brisbane contacted the defendant to ask him for passwords to his password-protected files, but the defendant stated "that the computer had multiple users . . . and that he would have to contact some of his partners to actually get the passwords for the computer." (CR 55; RT 8/27/08 20; ER 73.) The defendant, however, never responded to Agent Brisbane's request and, instead, left the country. (CR 55; RT 8/27/08 20-22; ER 73-75.)

6

consent or assistance in the search.  *Cf. Cortez-Rocha*, 394 F.3d at 1123; *Arnold*, 523 F.3d at 946.

The defendant's other "least restrictive alternative" argument – that Owen could have driven down to the border and conducted the search – is also legally irrelevant.  In any event, it was not unreasonable for Owen to search the laptop where his forensic laboratory was located, and the record supports that a search at the border would have posed more problems and would have been less efficient than a search at his laboratory where all his equipment was located.[3]  In other words, the defendant is incorrect when he claims that a search at the physical border was the best or most feasible alternative for Customs.   In short, the defendant's "least restrictive alternative" arguments are without merit on this record, but more important, they are without merit legally.  *Arnold*, 533 F.3d at 1008.

---

[3] As Agent Owen testified, searches at border crossings will often be less efficient than searches conducted in forensic laboratories.  (CR 55; RT 8/27/08 71-73, 79-80; ER 124-27, 132-33.)  He testified that, although he could have used his portable laptop to conduct a forensic search of the defendant's laptop, it would have taken much longer, his laboratory in Tucson had specialized equipment, and if he had encountered problems trying to conduct the search with his laptop at the border, he would not have had the equipment needed from his Tucson lab to troubleshoot the problem.  *Id.*  The government did not "misrepresent" the difficulties Owen cited.  (Ans. Br. at 26.)

B.    The Search of the Defendant's Laptop Was A Border Search, Not An Extended Border Search.

Contrary to the defendant's arguments – and the district court's erroneous belief – the fact that Owen completed the border examination of the defendant's computer in Tucson did not convert the border search into an extended border search for which reasonable suspicion was required.  As noted in the government's opening brief, this was not an extended border search because the laptop was not cleared by Customs to enter the United States anytime before it was searched, but remained in Customs' custody as it completed its border search.  *See United States v. Seljan,* 547 F.3d 993, 996, 1002 (9th Cir. 2008) (recognizing merchandise must "clear customs"); *United States v. Alfonso*, 759 F.2d 728, 734 (9th Cir. 1985) (extended border search occurs "subsequent to a border crossing").  Extended border searches are commonly used to assist law enforcement with continued surveillance of a person or merchandise after clearing Customs in hopes of revealing a greater criminal scheme, and only after Customs has cleared the person or merchandise to enter the United States does a reasonable expectation of privacy subsequently attach.  (Op. Br. at 36-38, citing cases.)[4]

---

[4] The defendant contends that courts have found extended border searches even where the item has not cleared Customs (Ans. Br. at 40), but he is mistaken. In three of the extended border search cases he cites, the individuals, their property and conveyances were allowed to enter or remain in the United States after

The district court incorrectly found that time and distance mandated a finding that this was an extended border search.[5] Those factors were not relevant because the laptop had never been cleared from Customs custody, i.e., it was not allowed to freely enter the United States before being searched inside the country. (Op. Br at 35-42.) Rather, there was one continuous border search of the defendant's laptop – which started in Lukeville and was completed in Tucson – and remained a border search throughout. (Op. Br. at 5-7.) *See also Blefare v. United States*, 362 F.2d 870, 874 (9th Cir. 1966) (border search occurred even though defendant was taken away from border to have his stomach pumped during body cavity border search; "The search

crossing over a land border of the United States, or docking at a United States port. *See United States v. Alfonso*, 759 F.2d 728, 731-32, 734 (9th Cir. 1985); *United States v. Castillo-Garcia*, 424 F.2d 482, 483-84 (1970); *Alexander v. United States*, 362 F.2d 379, 380 (9th Cir. 1966). In *United States v. Guzman-Padilla*, 573 F.3d 865, 873-76, 880 (9th Cir. 2009), law enforcement did not see the vehicle that was searched cross the U.S.-Mexico border, so the defendant cannot say that the vehicle was cleared or not cleared. In fact, one of the issues the Court considered was whether there was a reasonable certainty that the vehicle had crossed the border at all. *Id.* at 879-81. Although the Court did not reach the issue, it logically follows that, had the vehicle crossed at a Port of Entry, the individuals and vehicle had been cleared by Customs, because they were allowed to enter the United States. If they did not cross at a Port of Entry, they would not have had the opportunity to be cleared by Customs.

[5] *See United States v. Abbouchi*, 502 F.3d 850, 855 (9th Cir. 2007) ("We have recognized that comparison of absolute time and spatial differences alone is not enough to distinguish between a search at the border's functional equivalent and an extended border search.").

that resulted in the recovery of the questioned evidence was a border search. While it occurred at a place removed by 12 miles from the border, the process was a continuing one and the search was not so removed in time and distance as to cause it to lose its character as a border search.").

This Court has never held that all border searches must occur within a certain distance of the physical border or within a specified amount of time. Indeed, as noted in the government's opening brief, such rigid limitations would inhibit the government's ability to conduct effective border searches of computers and other items that are time-consuming to analyze. (Op. Br. at 42-46.) While case law defining the "functional equivalent of the border" focuses primarily on international airports and seaports,[6] the true test for a search at the functional equivalent of the

---

[6] The defendant also refers to "consignment cases" as functional equivalent of the border searches and attempts to differentiate them based on the fact that the importers in these cases had all "voluntarily entrusted" an item to another person. (Ans. Br. at 33-36.) Border search authority, however, does not depend on an evaluation of the ownership of the merchandise to validate the search. Cases such as *United States v. Gallagher*, 557 F.2d 1041 (4th Cir. 1977) and *United States v. Caminos*, 770 F.2d 361, 364-65 (3d Cir. 1985) (Ans. Br. at 33.) discuss a "customs bond" that is required with common carriers to ensure no changes are made to the merchandise – so that it may be considered having never been "cleared by Customs." 19 C.F.R. Part 113. Here, it is the same as having remained in Customs custody. In fact, the defendant states that "when one ships anything internationally, one knows that there may be an inspection somewhere, but the exact point at which it occurs is immaterial to the owner because no matter where it occurs the package is already in the possession of a common carrier, and the owner has no reasonable expectation of re-taking possession of the package before

border is not the distance or time from the initial presentation to customs, but instead, whether the search was made at the "first practicable detention point" since the nexus with the border. *United States v. Caminos*, 770 F.2d 361, 365 (3d Cir. 1985)*; cf. Abbouchi,* 502 F.3d at 855-56; *Almeida-Sanchez v. United States* , 413 U.S. 266, 272-73 (1973).[7]

"[P]racticality must be viewed realistically." *Caminos*, 770 F.2d at 365. Although it may have been physically possible for Owen to travel to Lukeville to conduct this one particular search, this does not mean that doing so would have been practicable, as already discussed. Given the broad mandate of Customs officers, courts have recognized that specific expertise is often needed in making determinations as to admissibility of merchandise and, in securing such expertise, a

---

its delivery." (Ans. Br. at 34.) The same logic applies in the current case, because once the government detained the defendant's laptop at the border, the defendant knew that it would be searched somewhere. The fact the search was completed in Tucson did not implicate any heightened expectation of privacy.

[7] In *United States v. Laich*, 2010 WL 259041 (E.D. Mich. Jan. 20, 2010), the district court found that the search and seizure of the defendant's laptop, which occurred after he and his property had initially been cleared by Customs at the Dallas-Fort Worth airport, was an extended border search. *Id.* at *4. The facts in *Laich* are distinguishable from those in the case at bar, because the defendant's laptop here was never cleared by Customs and allowed to enter the country. In fact, the court in *Laich* did not even consider the initial detention and search of Laich's laptop. *Id.* ("Here, Laich appears to concede that the Government's initial detention and search of his laptop at the Dallas-Fort Worth Airport falls within the border exception.").

11

reasonable amount of time is required. *See generally United States v. Bennett*, 363 F.3d 947, 949-51 (9th Cir. 2004); *Heidy v.United States Customs Service*, 681 F. Supp. 1445, 1449 (C.D. Cal. 1988) (recognizing Customs officers may seek assistance and expertise during the course of a border search of detained merchandise). As such, courts have found that moving merchandise from one place to another is permissible in the course of a thorough border search. *Bennett*, 363 F.3d at 949-51; *see also United States v. Puig*, 810 F.2d 1085, 1086 n.4 (11th Cir. 1987) (finding towing of boat to state police dock proper border search as first practicable location to conduct such an extensive search).[8]

As the defendant tacitly concedes, it is a practical impossibility for the government to equip every border crossing with a forensic laboratory and trained computer examiners. (Ans. Br. at 56-57.) Accordingly, the defendant's proposed border search restrictions would prevent the government from conducting comprehensive border searches of computers in many cases because, absent reasonable suspicion, the government would be precluded from sending any

---

[8] The defendant incorrectly cites *Bennett*, 363 F.3d 947, for the proposition that a detained boat that is moved to allow a more sophisticated search is an extended border search that requires reasonable suspicion. (Ans. Br. at 42.) Contrary to this assertion, this Court specifically found that "the search of Bennett's boat occurred at the functional equivalent of the border." *Id*. at 951. The defendant's contention that *Bennett* applied an extended border search analysis is incorrect.

computers off-site for analysis. In other words, under the defendant's rule, once Customs agents encounter a computer, undeveloped film, or other similar item at the border whose contents they cannot access, they would need to either get the item examined at the physical border regardless of the difficulties or length of time required to do so – or they will be forced to hand the item back to the owner without fully examining it and allow it to enter the United States.

This result is not only incompatible with Customs' statutory border duties and the border search decisions of this Court and the Supreme Court, but it would be an unwarranted blow to Customs' ability to protect our borders from the introduction of contraband and other menaces, as explained in the government's opening brief. (Op. Br. at 43-46.); *See also Tabbaa v. Chertoff*, 509 F.3d 89, 97 (2d Cir. 2007) (explaining broad customs authorities to detain and search individuals, noting that, because border agencies are now housed in the Department of Homeland Security, a "crucial aspect" of their "primary mission … is to prevent terrorist attacks within the United States' and to 'reduce the vulnerability of the United States to terrorism.") (internal quotations omitted). Even the defendant acknowledges that the government could not have found these files without forensic equipment and a trained examiner. [9]

---

[9] To support his argument that border searches of computers do not require forensic laboratories, the defendant claims that customs agents in other cases – *Arnold*, *Romm*, *Ickes*, and *Roberts* – "required no forensic laboratories to find the

13

(Ans. Br. at 59.)  Requiring forensic examiners to travel to border crossings for computer searches is not practicable for the reasons set forth in the government's opening brief.  (Op. Br. at 43-46.)  The defendant acknowledges that his proposed border search restrictions may limit the government's searches of computers and other media to "preliminary forensic searches [that] may not find all contraband."  (Ans. Br. at 57.)[10]  This result is untenable and not mandated by the Fourth Amendment.

_____

pornography."  (Ans. Br. at 57.)  However, none of these cases discusses whether the child pornography was discovered with or without the aid of a forensic laboratory.

[10] Nonetheless, he urges the Court to adopt his proposed restrictions because "not every computer crossing the border can practicably be searched," and "[i]t is the fact that the Government ***may*** search that has the deterrent effect."  (Ans. Br. at 57 and 60) (emphasis in original).  The defendant's reasoning is flawed.  First, "'luggage carried by a traveler entering the country may be searched at random by a customs officer . . . no matter how great the traveler's desire to conceal the contents may be.'"  *Arnold*, 523 F.3d at 944 (quoting *United States v. Ross,* 456 U.S. 798, 823 (1982)).  Although the government may choose not to exercise this broad border search authority in every instance, it does not follow that the government should therefore be precluded from conducting full border searches of certain types of property.   Second, border search authority is not predicated on the potential "deterrent effect" of such searches, but rather is based on the government's "inherent sovereign authority to protect its territorial integrity." *Arnold*, 523 F.3d at 944 (quoting *Torres v. Puerto Rico*, 442 U.S. 465, 472-73 (1979)).  Moreover, the defendant's rule limiting the government's computer searches to "preliminary forensic searches" would erode any deterrent effect, at least with respect to computer data that could not be uncovered by such searches.

The defendant suggests that allowing off-site analysis in border searches would create "a technology exception" for border searches. In fact, the opposite is true – if the defendant's proposed geographic limitations were adopted, then this Court will be creating a rule that reasonable suspicion is needed to conduct a search of a computer or similar item if it cannot be searched at the actual international border, a ruling that would be contrary to the Fourth Amendment and controlling precedent permitting border searches to occur away from the physical border. *See Abbouchi,* 502 F.3d at 855, citing *Almeida-Sanchez*, 413 U.S. at 272-73.

C.     <u>The Search Was Not Unreasonably Conducted</u>

The defendant argues that, regardless of whether the search was a border search or a search at the functional equivalent of the border, the search of his laptop was unreasonable, thereby justifying suppression under the Fourth Amendment. He claims that the search was "patently offensive" (Ans. Br. at 44-46), which appears to be a claim that the search was conducted in a "particularly offensive" manner, a doctrine discussed in *Arnold*, 523 F.3d at 946-47. These claims are meritless for many reasons.

First, as the government noted in its opening brief, border searches by their very nature are reasonable under the Fourth Amendment, and require neither a warrant, probable cause, nor articulable suspicion. *Montoya de Hernandez,* 473 U.S.

15

at 538; *United States v. Ramsey,* 431 U.S. 606, 616-18 (1977). (Op. Br. at 18-19.) Because the search conducted here was a border search, it was reasonable.

Second, the defendant is simply wrong when he claims that the search was conducted in a particularly offensive manner. (Ans. Br. at 44-46.) This Court in *Arnold* noted that the Supreme Court has left open the possibility that a border search may be deemed "unreasonable" due to the "particularly offensive manner in which it is carried out." *Arnold*, 523 F.3d at 946-47 (quoting *United States v. Flores-Montano*, 541 U.S. 149, 155 n. 2 (2004).[11] The defendant's arguments are without merit. The search was conducted quite reasonably, as the district court found, and not in an offensive manner.

The reasonableness of a search depends on the facts and circumstances of the particular search. *Montoya de Hernandez*, 473 U.S. at 537. Courts must balance any intrusion resulting from the search with the legitimate governmental interest to

---

[11] In other contexts, this Court has held that reasonable suspicion is required to conduct strip searches, *United States v. Vance*, 62 F.3d 1152, 1156 (9th Cir. 1995), but not to detain a traveler for several hours to monitor bowel movements for contraband, *United States v. Gonzalez-Rincon*, 36 F.3d 859, 861, 863-64 (9th Cir. 1994); *Montoya de Hernandez*, 473 U.S. at 3311 (sixteen hours of detention with no outside contact awaiting a bowel movement not unreasonable); *See also Arnold*, 523 F.3d at 947 (concluding that search of defendant's laptop was not done in a "particularly offensive manner" because defendant "failed to distinguish how the search of his laptop and its electronic contents is logically any different from the suspicionless border searches of travelers' luggage that the Supreme Court and we have allowed.").

16

determine reasonableness under the Fourth Amendment. *Id.* at 544. The defendant is essentially asking this Court to ignore the district court's factual finding below that the Department of Homeland Security acted reasonably in conducting the search. As the government noted in its opening brief:

> The magistrate judge here (whose findings the district court adopted) twice noted that DHS acted reasonably in conducting the search of Cotterman's laptop: (1) "It is true that the conduct of the officers was reasonable . . . " (CR 58; ER 8); (2) "We need not reach that question here, where the facts show reasonable diligence and speed in conducting the forensic examination." (CR 58; ER 10.) Thus, the suppression order was not based on the lack of reasonableness in conducting the search; it was based on the erroneous belief that a border search could not take place away from the border and several hours later. This conclusion was wrong. *See Alfonso*, 759 F.2d at 736 ("To be quite clear, we do not view the thirty-six hour delay as dispositive. Courts have upheld border searches one hundred fifty miles from the border and one hundred forty-two hours after a border crossing . . . .").

(Op. Br. at 27.)

The defendant tries to argue that the district court did not, in fact, find the search to be reasonable, but instead found that "the officers herein acted according to guidelines they were given . . . and that their behavior was not so extreme as to be the equivalent of destroying the property, or to be analogous to a body-cavity search." (Ans. Br. at 43.) He fails to provide any citations to the record to support this assertion, but it seems to support the government's point – that the agents did not act unreasonably. In any event, the defendant argues that no such finding could be made

17

because "the scope of the intrusion was great . . . . the manner of the seizure was patently offensive . . . . [and] the justification for the seizure was non-existent." (Ans. Br. at 43-48.)  The defendant's arguments are incorrect.

The search was neither offensive nor destructive.[12]  In addition to the district court's findings quoted earlier, the court also stated: "It is true that the conduct of the officers was reasonable and in fact responsive to ICE field guidelines. . . . Moreover, there was no destruction of Defendant's property."  (CR 58; ER 8.)[13]  In addition, in noting that certain circumstances may have required the agents to obtain a search warrant to search the defendant's laptop, the district court stated, "[w]e need not reach that question here, where the facts show reasonable diligence and speed in conducting the forensic examination."  (CR 58; ER 10.)  Such conclusions were appropriate in light of the facts and circumstances of the search.  Thus, the district court specifically found that the search was not unreasonable.

--------

[12] Border searches of property that are particularly destructive require particularized suspicion.  *Flores-Montano*, 541 U.S. at 155; *but see*, *United States v. Hernandez*, 424 F.3d 1056, 1059 (9th Cir. 2005) (dismantling car door panels not excessively destructive so as to be unreasonable).

[13] The district court conducted an analysis of the reasonableness of the search under the limitations defined for border searches and searches at the functional equivalent of the border.  (CR 58; ER 8, 10) (citing *Montoya de Hernandez*, 473 U.S. 531; *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005); and *Arnold*, 523 F.3d at 941).

18

Even if this Court were to revisit the district court's factual findings on this point even though they were not clearly erroneous, the district court properly found that the search was not unreasonable. The detention[14] and search of the laptop computers and digital camera were not offensive or unreasonable. Contrary to the defendant's inaccurate claim, the government is not advocating that a border search should be allowed to go on "indefinite[ly]." (Ans. Br. at 18.) The timing of the search was not unreasonable nor intrusive because the forensic examiner worked with reasonable dispatch, over the weekend, to complete the search and found the child pornography within forty-eight hours. The computers and camera were initially examined on Friday, April 6, the day the Cottermans arrived in Lukeville, and were delivered to Agent Owen in Tucson at about 10:00 p.m. that night to complete their examination. (CR 58; ER4.) Owen examined the defendant's computer the next day, Saturday, April 7. He found child pornography on that computer the following day, Sunday, April 8. (CR 58; ER4; Resp. to Mot. to Supp. 4.) He asked the defendant

---

[14] The defendant repeatedly complains that he was subjected to a "seizure" when the government took his laptop to Tucson to complete the border search. Sending his laptop off-site, however, did not interfere with the defendant's possessory interests; rather, the government had already detained the computer for the duration of the lawful search that began at the border. Because the Supreme Court and the Ninth Circuit have consistently held that the government may conduct suspicionless border searches, then no reasonable suspicion is required when property is detained for the duration of a border search, notwithstanding the defendant's contrary claims.

to come down the very next day, Monday, April 9, but the defendant boarded a plane instead. (CR 55; RT 8/27/08 20-21; ER 73-74.) Thus, the computer forensic search was completed very quickly, particularly when compared to the typical forensic search, as Owen noted. (CR 55; RT 8/27/08 127; ER 127.) The border search was not "indefinite" nor unreasonable; rather, Customs worked very quickly to complete its examination of the defendant's computer.

This search was reasonable, and "justified by the Government's paramount interest in protecting the border." *Flores-Montano*, 541 U.S. at 155. The district court found that the search was conducted reasonably, and the defendant has not shown that the district court clearly erred with its factual findings.

"Once the officers have the right to conduct a thorough search, they are entitled to use reasonable means to effect that search." *Puig,* 810 F.2d at 1087 (internal quotations omitted). As the court recognized in *Puig*, to do otherwise would invite criminals to use government limitations to their advantage. Here, Customs performed its law enforcement duties in an expeditious and reasonable manner. There was no "crippling" of the Fourth Amendment (Ans. Br. at 23), but instead a balanced and practical use of law enforcement means to protect our Nation from contraband of all types.

The defendant never explains how he was prejudiced by the fact that his computer was searched in Tucson, rather than at the Lukeville POE, or how the transfer of his laptop resulted in a greater intrusion on his privacy than if the search had occurred at the border. Indeed, the defendant's apparent alternative – i.e., that Customs should have kept the Cottermans at the border for days while it conducted a forensic analysis of the laptops and camera at the border – is actually less reasonable. Indeed, this Court in *Arnold* noted that the border search of a piece of property, as opposed to the border search of a person, "simply does not implicate the same 'dignity and privacy' concerns as 'highly intrusive searches of the person.'" *Arnold*, 523 F.3d at 946. Customs quite reasonably decided to allow the Cottermans (people) to enter the country, while detaining the laptops and camera (property) to complete the required border search. Because the defendant's laptop could have been searched at the border, the defendant possessed no heightened expectation of privacy that was invaded when the search was continued elsewhere.[15]

---

[15] The defendant's suggestion that he was eager to get his computer back is somewhat incredible (Ans. Br. at 44), considering that when Owen called him on Sunday to ask him come down the next day, the defendant boarded a plane the next day for Mexico instead. (CR 55; RT 8/27/08 20-21; ER 73-74.)

D.  Statutes Discussing Border Searches Are Not Irrelevant To
    Reasonableness.

The defendant concedes that the statutes and regulations cited in the
government's opening brief grant Customs "wide authority" (Ans. Br. at 49) to
conduct border searches in order to search and examine any vehicle or person for
merchandise that might be introduced into the United States in any manner contrary
to law (Op. Br. at 17-18).  There is no dispute that this authority includes the right to
examine for potentially obscene materials (Op. Br. at 17) and to search all persons,
baggage, and merchandise, which is not to be delivered from the custody of Customs
until it has been inspected, appraised, or examined, and found to have complied with
the laws of the United States (Op. Br. at 17-18 & n.1).

The defendant instead contends that the statutes are "irrelevant to this case."
(Ans. Br. at 51).  However, the statutes appear quite relevant in an appeal that
concerns the nature and scope of border searches, which the Supreme Court has
determined are reasonable under the Fourth Amendment.  The defendant's other
argument – that the laptop was not "merchandise" and so could not be searched (Ans.
Br. at 49-50) – is foreclosed by this Court's decision in *Arnold,* where this Court
rejected Arnold's argument that his laptop computer did not fall within border search
authority, and instead found that a laptop is the type of item that can be searched

22

without reasonable suspicion during a border search. 523 F.3d at 946. This panel cannot revisit *Arnold*'s determination that laptop computers can properly be searched during a border search.[16]

The forensic examination of the defendant's laptop computer constituted a border search, even though it occurred a distance from the border, because the computer was never cleared by Customs to enter the United States and remained in their custody. The examination of the laptop by Owen was a continuation of the

---

[16] Even if the ruling in *Arnold* could be revisited, the defendant's "merchandise" argument is incorrect. He erroneously cites 19 U.S.C. § 1202, the codification of the Harmonized Tariff Schedule, for the incorrect proposition that Title 19 "deals primarily with Customs duties on commercially imported 'merchandise,' which usually arrives as a consigned shipment …, not the household goods accompanying citizens returning from vacation." (Ans. Br. at 49.) The Harmonized Tariff is the most specialized area of international trade law and inapplicable here; contrary to the defendant's argument, Title 19 not only governs commercially imported merchandise, it governs ordinary people "returning from vacation." (Ans. Br. at 49.) In fact, Title 19 grants Customs its broad border search authority, requires people to report to Customs with their baggage for entry to the United States (*see e.g.,* 19 U.S.C. §§ 482, 1433, 1581, 1582), and advises U.S. citizens that they will not be afforded any expedited clearance for their "baggage and effects," defined as "any article which was in the possession of the individual while abroad and is being imported in connection with his or her arrival and is intended for his or her bona fide personal or household use." 19 U.S.C. § 1496a. The defendant's reliance on *Imperial Pkg Corp. v. United States*, 535 F.Supp. 688 (Ct. Int'l Trade 1981) is similarly misplaced, because it concerns the term "merchandise" used in duty-free classifications under a specific provision in the Harmonized Tariff governing "'(c)ontainers, of rubber or plastics, with or without their closures, chiefly used for the packing, transporting, or marketing of merchandise.'" *Id.* at 689 (quoting Tarriff).

search initiated at the border and therefore did not implicate any heightened expectation of privacy. The search was a border search and reasonable. A contrary ruling is not warranted by the Fourth Amendment, and it would unfairly hamper Customs' ability to protect our borders and prevent the introduction of contraband through computers and other similar media. The child pornography was discovered on the defendant's computer during a lawful border search, and it should not have been suppressed.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the district court's order suppressing the evidence

in this case should be reversed.

> DENNIS K. BURKE
> United States Attorney
> District of Arizona
>
> CHRISTINA M. CABANILLAS
> Appellate Chief
>
> */s Carmen F. Corbin*
>
> CARMEN F. CORBIN
> Assistant U.S. Attorney

## V. <u>CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 09-10139</u>

I certify that: (check appropriate option(s))

  X   1. Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

⊠ Proportionately spaced, has a typeface of 14 points or more and contains  6,189  words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words), or is

☐ Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

____ 2. The attached brief is **not** subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because

☐ This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

☐ This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

☐ Proportionately spaced, has a typeface of 14 points or more and contains _____ words, or is

☐ Monospaced, has 10.5 or fewer characters per inch and contains _____ pages or _____ words or _____ lines of text.

February 19, 2010        */s Carmen F. Corbin* _____

Date                      Assistant U.S. Attorney

## VI.  **CERTIFICATE OF SERVICE**

I hereby certify that on this <u>19th</u> day of February, 2010, I electronically filed the Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s Carmen F. Corbin*
Assistant U.S. Attorney

CMC/cgf