No. 09-10139

Before the Honorable Betty Binns Fletcher,
Richard C. Tallman, and Johnnie B. Rawlinson, CJJ
Opinion issued March 30, 2011

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,    )
    ) D.C. No. 4:07-cr-01207 RCC CRP
    Plaintiff-Appellant,  )
    ) District of Arizona
    v.    )
    )
HOWARD WESLEY COTTERMAN,    )
    )
    Defendant-Appellee.  )
_____ )

On Appeal from the United States District Court
for the District of Arizona

_____

**UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF *AMICI CURIAE*
IN SUPPORT OF DEFENDANT-APPELLEE'S
PETITION FOR REHEARING *EN BANC***
_____

DAVID M. PORTER
Vice-Chair, NACDL Ninth
Circuit *Amicus* Committee
801 I Street, 3rd Floor
Sacramento, California 95814

Telephone: (916) 498-5700
Facsimile: (916) 498-5710

*Counsel of Record*

MICHAEL PRICE
Counsel, Liberty & National
Security Program
Brennan Center for Justice
161 Avenue of the Americas,
12th Floor
New York, NY 10013

Telephone:  (646) 292-8335

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | UNOPPOSED MOTION FOR LEAVE TO |
| Plaintiff-Appellant, ) | FILE BRIEF AMICI CURIAE IN |
| ) | SUPPORT OF DEFENDANT-APPELLEE'S |
| v. ) | PETITION FOR REHEARING EN BANC |
| ) | |
| HOWARD WESLEY COTTERMAN, ) | |
| ) | |
| Defendant-Appellee. ) | |
| _____ ) | |

Pursuant to Rules 27 and 29, Federal Rules of Appellate
Procedure, and Ninth Circuit Rules 27-1 and 29-2, the National
Association of Criminal Defense Lawyers and the Electronic
Frontier Foundation, by and through their attorney, David M.
Porter, respectfully move for leave to file a brief *amici curiae*
in support of Mr. Cotterman.

I.

Defendant, Howard Wesley Cotterman, is represented by
William Kirchner of Nash & Kirchner, P.C.  Attorney Kirchner
consents to the filing of this brief on behalf of his client.
Further, Attorney Kirchner has spoken with Assistant United
States Attorney Carmen Corbin, who represents the United States
in this matter, and reports that the United States does not
oppose this motion to file this brief.

II.

The prospective amici are the National Association of
Criminal Defense Lawyers (NACDL) and the Electronic Frontier

Foundation (EFF). NACDL is a non-profit professional bar association that represents the nation's criminal defense attorneys. Its mission is to promote the proper and fair administration of criminal justice and to ensure justice and due process for those accused of crime or misconduct. NACDL has an interest in this case because its members represent criminal defendants within the Ninth Circuit who will be adversely affected by the panel's interpretation of the border search doctrine. NACDL is also a plaintiff and co-counsel in *Abidor v. Napolitano*, No. CV-10-4059 (E.D.N.Y. filed Sept. 7, 2010), which seeks to enjoin customs officials from conducting suspicionless searches of travelers' laptops and other electronic devices. Moreover, NACDL has filed briefs *amicus curiae* in other cases involving the intersection of technology and the Fourth Amendment, including *Kyllo v. United States*, 533 U.S. 27 (2001), *People v. Weaver*, 909 N.E.2d 1195 (N.Y. 2009), and *State v. Johnson*, 944 N.E.2d 270 (Ohio Ct. App. 2010), *appeal allowed by* 943 N.E.2d 572 (Ohio Mar. 16, 2011).

EFF is a non-profit, member-supported civil liberties organization based in San Francisco, California, working to protect free speech and privacy rights in an increasingly sophisticated and technological world. EFF has served as counsel or *amicus curiae* in key cases addressing computer crime, electronic privacy statutes and the application of the Fourth

2

Amendment to new technologies, including *City of Ontario v. Quon*, 130 S. Ct. 2619 (2010), and *United States v. Maynard*, 615 F.3d 544, 562 (D.C. Cir. 2010), *petition for cert. granted sub nom United States v. Jones*, ___ U.S. ___, 131 S.Ct. 3064 (Jun. 27, 2011) (No. 10-1259).  With more than 14,000 dues-paying members, EFF represents the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age.  EFF believes that its members will be adversely affected by the panel's interpretation of the border search doctrine.

### III.

This motion and brief are timely under Ninth Circuit Rule 29-2(e) because they are filed within seven days of the filing of defendant-appellee's petition on September 12, 2011.

Dated:  September 19, 2011

Respectfully submitted,


 s/ *David M. Porter*
DAVID M. PORTER
Counsel for Prospective *Amici Curiae*

3

No. 09-10139

Before the Honorable Betty Binns Fletcher,
Richard C. Tallman, and Johnnie B. Rawlinson, CJJ
Opinion issued March 30, 2011

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | D.C. No. 4:07-cr-01207 RCC CRP |
| Plaintiff-Appellant, | ) | |
| | ) | District of Arizona |
| v. | ) | |
| | ) | |
| HOWARD WESLEY COTTERMAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

On Appeal from the United States District Court
for the District of Arizona

————————————————————

**BRIEF *AMICI CURIAE* OF THE NATIONAL ASSOCIATION
OF CRIMINAL DEFENSE LAWYERS AND THE ELECTRONIC
FRONTIER FOUNDATION IN SUPPORT OF DEFENDANT-APPELLEE'S
PETITION FOR REHEARING *EN BANC***

————————————————————

DAVID M. PORTER
Vice-Chair, NACDL Ninth
Circuit *Amicus* Committee
801 I Street, 3rd Floor
Sacramento, California 95814

Telephone: (916) 498-5700
Facsimile: (916) 498-5710

*Counsel of Record*\*

\*Additional counsel listed on signature page.

MICHAEL PRICE
Counsel, Liberty & National
Security Program
Brennan Center for Justice
161 Avenue of the Americas,
12th Floor
New York, NY 10013

Telephone:  (646) 292-8335

**TABLE OF CONTENTS**

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     I.    The Panel's Decision to Authorize the Suspicionless, Indefinite Seizure of an Individual's Laptop at the Border is Unprecedented and Raises Special Constitutional Concerns. . . . . . . . . . . . . . . 1

     II.   Seizing an Individual's Laptop, Without Suspicion, in Order to Conduct a Computer Forensic Search is Outside the Scope of a Permissible Investigatory Detention. . . . . . . . . . . . . . . . . . . . . . 5

     III. Authorizing a General Computer Forensic Search without Suspicion is Abhorrent to the Fourth Amendment and is Therefore Always Conducted in a "Particularly Offensive Manner." . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . 17

Brief Format Certification Pursuant to Rule 32 . . . . . . . iv

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## FEDERAL CASES

*In re Application of the U.S.*, 770 F. Supp. 2d 1138
(W.D. Wash. 2011) . . . . . . . . . . . . . . . 12, 13, 15

*Go-Bart Importing Co. v. United States*, 282 U.S. 344
(1931) . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Kremen v. United States*, 353 U.S. 346 (1957) . . . . . . . 12

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . 6, 7

*United States v. $124,570 U.S. Currency*, 873 F.2d 1240
(9th Cir. 1989) . . . . . . . . . . . . . . . . . . 14

*United States v. Arnold*, 533 F.3d 1003 (9th Cir. 2008) . 5, 15

*United States v. Bulacan*, 156 F.3d 963 (9th Cir. 1998) . . . 13

*United States v. Caicedo-Guarnizo*, 723 F.2d 1420
(9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 6

*United States v. Comprehensive Drug Testing*, 621 F.3d 1162
(9th Cir. 2010) . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Flores-Montano*, 541 U.S. 149 (2004) . . . . 4

*United States v. Fortna*, 796 F.2d 724 (5th Cir. 1986) . . . . 9

*United States v. Gonzalez-Rincon*, 36 F.3d 859 (9th Cir. 1994) 7

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) . . . 14

*United States v. Hanson,* Number CR 09-00946,
2010 WL 2231796 (N.D. Cal. June 2, 2010) . . . . . . . . . 14

*United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) . . . . . 8

*United States v. Jacobsen*, 466 U.S. 109 (1984) . . . . . . . 14

*United States v. Montoya de Hernandez*, 473 U.S. 531
(1985) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

ii

*United States v. Place*, 462 U.S. 696 (1983) . . . .   6, 7, 9, 11

*United States v. Ramsey*, 431 U.S. 606 (1977)  . . . . . .   4, 11

*United States v. Seljan*, 547 U.S. 993
  (9th Cir. 2008) . . . . . . . . . . . . . . . . 10, 15, 16

*United States v. Soto-Teran*, 44 F. Supp. 2d 185
  (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . .   9

*United States v. Ziegler*, 474 F.3d 1184 (9th Cir. 2007) . . .   8


**STATE CASES**

*State v. Nelson*, 842 A.2d 83 (N.H. 2004) . . . . . . . . . .   8


**DOCKETED CASES**

*Abidor v. Napolitano*, No. CV-10-4059 (E.D.N.Y. filed Sept. 7,
2010) . . . . . . . . . . . . . . . . . . . . . . . . . . .   2


**FEDERAL STATUTES**

19 U.S.C. § 1581(e) . . . . . . . . . . . . . . . . . . . . 10


**MISCELLANEOUS**

*Orin S. Kerr, Searches and Seizures in a Digital World,*
  119 Harv. L. Rev. 531 (2005) . . . . . . . . . . . . . .   3

Randolph S. Sergent*, A Fourth Amendment Model for Computer
Networks and Data Privacy,* 81 Va. L. Rev. 1181 (1995) . . . .   8

Scott J. Upright*, Suspicionless Border Seizures of Electronic
Files: the Overextension of the Border Search Exception to the
Fourth Amendment,* 51 Wm. & Mary L. Rev. 291 (2009) . . . . .   8

iii

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **BRIEF AMICI CURIAE OF THE** |
| | ) | **NATIONAL ASSOCIATION OF CRIMINAL** |
| Plaintiff-Appellant, | ) | **DEFENSE LAWYERS AND THE** |
| | ) | **ELECTRONIC FRONTIER FOUNDATION IN** |
| v. | ) | **SUPPORT OF DEFENDANT-APPELLEE'S** |
| | ) | **PETITION FOR REHEARING EN BANC** |
| HOWARD WESLEY COTTERMAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

**ARGUMENT**

**I.    The Panel's Decision to Authorize the Suspicionless,
Indefinite Seizure of an Individual's Laptop at the Border
is Unprecedented and Raises Special Constitutional Concerns.**

The panel's decision authorizes the government to seize a
traveler's property and detain it indefinitely without any
suspicion of wrongdoing whatsoever.  This holding is
unprecedented, conflicts with Ninth Circuit and Supreme Court
case law, and raises special constitutional concerns that merit
rehearing en banc.

While the panel asserts that its opinion stops short of
"anything goes" at the border, the panel imposes only a nominal
restraint on the government's authority to seize and detain
property: "whether a detention remain[s] 'reasonably related in
scope to the circumstances which justified it initially.'"
*Cotterman*, 637 F.3d at 1070 & 1082.  But if there are no
particular circumstances that "justified it initially," no

suspicion of any illegal activity whatsoever, then there is also no measuring stick against which to judge the reasonableness of the detention. Consequently, there is no check on the length of time the government may detain a traveler's property.

Under scrutiny, the majority's test for determining a reasonable length of detention is really no test at all. As Judge Fletcher observes in her forceful dissent, "the Government has authority to seize an individual's property in order to conduct an exhaustive search that takes days, weeks, or even months, with no reason to suspect that the property contains contraband." *Id.* at 1084.

If, for example, customs officials suspected that that Mr. Cotterman's computer was a shell for smuggling illegal drugs, simply powering up machine might have been sufficient to "fully allay" their concerns, *id.* at 1077, and presumably a few minutes' detention would be reasonable. Or had customs officials reasonably suspected that Mr. Cotterman's computer contained illegal pornographic images, then perhaps a forensic search of the hard drive would be warranted, which might reasonably consume hours or days. But customs officials admittedly had no such suspicion in Mr. Cotterman's case. *Id.* at 1074. And if their only justification for the seizure of Mr. Cotterman's laptop is the strong but amorphous interest in protecting the border, then the scope of the search and the time it takes to complete it are

2

limited only by the imagination of customs officials. See Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531, 544 (2005) (detention of a computer to conduct a forensic search is limitless in time because the "analysis of a computer hard drive takes as much time as the analyst has to give it").

As Judge Fletcher observes, the government's border search power extends well beyond uncovering evidence of crimes related to smuggling or national security:

> [I]t could also translate any documents in a foreign language, ensure that none of the seemingly innocuous pictures are actually encrypted messages, verify the licenses on any music or movies on the computer, review financial logs for evidence of insider trading, read email correspondence to ensure that there is no communication with known criminals – the list of possible "concerns" is endless.

*Cotterman*, 637 F.3d at 1087 n.5 (Fletcher, J, dissenting). Customs officials are in fact responsible for enforcing hundreds of different laws and regulations, including those addressing immigration, currency and financial transactions, commerce and trade, copyrights and trademarks, narcotics, the sale of agricultural products, and import/export controls on wildlife and plants, chemical and biological weapons, guns, and other contraband items. See generally U.S. CBP, "Summary of Laws and Regulations Enforced by CBP" (Feb. 4, 2005), *available at* http://www.cbp.gov/xp/cgov/trade/legal/summary_laws_enforced/. The panel's decision would permit officials to seize a traveler's laptop and examine every kilobyte for as long as it takes to

3

satisfy their non-suspicion that any one of these laws may have
been violated.

Such a boundless interpretation of the Fourth Amendment is
unprecedented. Although the border search doctrine is
well-established, see *United States v. Flores-Montano*, 541 U.S.
149, 152-53 (2004); *United States v. Ramsey*, 431 U.S. 606, 616
(1977), the Supreme Court has consistently required officials to
suspect that a traveler's property is likely to contain
contraband prior to seizing it. See *Ramsey*, 606 U.S. at 618 (a
traveler's "right to be let alone neither prevents the search of
his luggage nor the seizure of *unprotected, but illegal*,
materials when his possession of them is discovered during such a
search") (quoting *United States v. Thirty-Seven Photographs*, 402
U.S. 363, 376 (1971)) (emphasis added in *Ramsey*).

Moreover, the panel's reliance on *Flores-Montano* and *United
States v. Montoya de Hernandez*, 473 U.S. 531 (1985), is
misplaced. *Flores-Montano* addressed the suspicionless search of
a traveler's gas tank, not a suspicionless seizure, 541 U.S. at
154-55, while customs agents in *Montoya de Hernandez* reasonably
suspected that the traveler was smuggling contraband in her
alimentary canal. 473 U.S. at 536. The Court in fact relied on
that suspicion to determine that her 24-hour detention was
reasonable. *Id*. at 543-44. Similarly, *United States v. Arnold*
is inapposite because customs officials did not seize the

4

traveler's electronic devices until after they discovered
pornographic images of minors on his computer.  533 F.3d 1003,
1005 (9th Cir. 2008).  As Judge Fletcher observes, "the officers
did not seize the computer for an indefinite period until after
they identified contraband, and they obtained a warrant before
conducting an exhaustive forensic search of all the computer's
data."  *Cotterman*, 637 F.3d at 1085 n.3 (Fletcher, J,
dissenting).

   While customs officials may temporarily detain a traveler's
property for the time it takes to conduct a routine search (see
part II, *infra*), their power to seize that property is far
narrower and contingent upon some suspicion that it contains
contraband or evidence of a crime.  Without such suspicion, there
is no point of reference for determining whether the length of
detention is "reasonably related in scope" to the search.
*Montoya de Hernandez*, 473 U.S. at 542.  The panel's decision that
no suspicion is required thus raises serious Fourth Amendment
concerns that *amici* respectfully urge this Court to consider en
banc.

## II.  Seizing an Individual's Laptop, Without Suspicion, in Order to Conduct a Computer Forensic Search is Outside the Scope of a Permissible Investigatory Detention.

   The suspicionless seizure and indefinite detention of a
traveler's electronic devices for the purpose of conducting a
forensic search is outside the scope of a permissible

investigatory detention under the Fourth Amendment. Although some period of detention incidental to a border search is inevitable, both the Supreme Court and the Ninth Circuit have held that similar investigatory detentions are subject to reasonable temporal limits. See *Montoya de Hernandez*, 473 U.S. at 541 (holding that reasonable suspicion is required to restrain a traveler at the border beyond the scope of a routine customs search and inspection); *United States v. Place*, 462 U.S. 696, 706 (1983); *United States v. Caicedo-Guarnizo*, 723 F.2d 1420, 1423 (9th Cir. 1984). As the length of detention becomes prolonged, a higher level of suspicion, and eventually, a warrant based on probable cause is required. See *Caicedo-Guarnizo*, 723 F.2d at 1423. The potentially indefinite nature of the seizure in this case should therefore require, at minimum, reasonable suspicion that the attendant search is likely to uncover contraband or evidence of a crime.

In *United States v. Place*, the Supreme Court found that property seizures can vary in intrusiveness, and that the "seizure of personal luggage from the immediate possession of the [traveler]" is uniquely invasive because it "intrudes on both the [traveler's] possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary." 462 U.S. 696, 708 (1983). Consequently, the Court referenced the standard established in *Terry v. Ohio*, 392 U.S. 1 (1968), and held that

6

"the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause," *Id*. at 708-09. Under *Terry*, law enforcement may briefly stop and detain an individual and his or her property provided there is a reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity. *Terry*, 392 U.S. at 27. A government officer may seize property within the bounds of a *Terry* stop so long as the length of detention is properly limited in scope. *Id*. at 19; *Place*, 462 U.S. at 702.

In *Place*, the Court applied *Terry* and held that exposing a traveler's luggage to a drug detection dog is not a "search" for Fourth Amendment purposes, but that seizing the luggage and detaining the traveler for 90 minutes while waiting for the dog to arrive exceeded the permissible limits of an investigative stop. *Place*, 462 U.S. at 698. The reasonableness of the search or seizure is tied to "the brevity of the invasion of the individual's Fourth Amendment interests." *Id*. at 709; see also *United States v. Gonzalez-Rincon*, 36 F.3d 859, 863 (9th Cir. 1994) (requiring a "'particularized and objective basis for suspecting the particular person of alimentary canal smuggling'" to justify prolonged detention pursuant to a border search) (quoting *United States v. Oba*, 978 F.2d 1123, 1126 (9th Cir. 1992)). The length of time that an individual's property and

7

liberty interests are compromised is thus a critical factor in determining whether the seizure is justified.

Detaining a traveler's computer to conduct a lengthy forensic search of the data exceeds the scope of a Terry stop by interfering with one's possessory interest in the property and liberty to continue on with travel plans. It interferes with possessory interests because it infringes on the use of the computer for work and communication. See *United States v. Hill*, 459 F.3d 966, 976 n.12 (9th Cir. 2006) ("For some people, computer files are the exclusive means of managing one's life—such as maintaining a calendar of appointments or paying bills. Thus, there may be significant collateral consequences resulting from a lengthy, indiscriminate seizure of all such files").[1]

_____

[1] *Amici* also note that the act of copying a hard drive for the purpose of conducting a forensic search constitutes a seizure requiring, at minimum, reasonable suspicion. See, e.g., *United States v. Ziegler*, 474 F.3d 1184, 1190 (9th Cir. 2007) (copying a defendant's hard drive constitutes a search and seizure that must meet the reasonableness requirement of the Fourth Amendment). Copying the contents of every electronic file on a computer hard drive significantly interferes with the owner's possessory interest in that data because one's property rights include "the right of the owner to exclude others and the owner's right to destroy property . . . ." Scott J. Upright, *Suspicionless Border Seizures of Electronic Files: the Overextension of the Border Search Exception to the Fourth Amendment*, 51 Wm. & Mary L. Rev. 291, 317 (2009); Randolph S. Sergent, *A Fourth Amendment Model for Computer Networks and Data Privacy*, 81 Va. L. Rev. 1181, 1186 (1995). See also, *State v. Nelson*, 842 A.2d 83, 86 (N.H. 2004). Copying the contents of a hard drive, which may include intellectual property or confidential information, prevents the computer's owner from controlling the use or dissemination of the

It also infringes on a traveler's liberty interest by preventing that person from continuing on with his or her travel plans. See *Place*, 462 U.S. at 708 ("Such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return"). Moreover, where officials "do not make it absolutely clear how they plan to reunite the suspect and his possessions at some future time and place, seizure of the object is tantamount to seizure of the person. This is because that person must either remain on the scene or else seemingly surrender his effects permanently to the police." *Id*. at 709 (quoting 3 W. Lafave, *Search and Seizure* § 9.6, p. 61 (1982 Supp.)).

The *Cotterman* majority disregards *Place* because they "decline to confuse border searches with their domestic counterparts." 637 F.3d at 1078 n.11. The border, however, is not a Fourth Amendment-free zone, and individuals at our borders enjoy its guarantees. See *Montoya de Hernandez*, 473 U.S. at 539

---

information it contains and therefore severely infringes on his or her possessory interest in that information. Consequently, the act of copying a hard drive constitutes a seizure under the Fourth Amendment that requires at least some degree of suspicion in the border context. See *United States v. Fortna*, 796 F.2d 724, 738 (5th Cir. 1986) (holding that a heightened level of suspicion was necessary for customs officials to photocopy documents found at the border); *United States v. Soto-Teran*, 44 F. Supp. 2d 185, 191 (E.D.N.Y. 1996) (citing *Fortna* and applying a reasonable suspicion standard for closely reading and photocopying documents at the border).

("Having presented herself at the border for admission, and having subjected herself to the criminal enforcement powers of the Federal Government . . . respondent was entitled to be free from unreasonable search and seizure").  Moreover, the Supreme Court explicitly adopted the *Terry* standard in the context of border detentions, finding that it "fits well" into border situations because "inspectors . . . rarely possess probable cause to arrest or search, yet governmental interests . . . are high indeed."  *Id.* at 541.

*Amici* recognize that one's Fourth Amendment interests are not as strong at the border as they would be during a typical *Terry* stop, but this Court has previously "decline[d] the government's invitation" to hold that "at the border, anything goes."  *United States v. Seljan*, 547 U.S. 993, 1000 (9th Cir. 2008).  To wit, the same federal statute authorizing customs agents to search property at the border strongly suggests that some degree of suspicion is required prior to seizing it.  See 19 U.S.C. § 1581(e) (requiring property seizure at the border, "[i]f . . . it shall appear that a breach of the laws of the United States is being or has been committed").

Following the panel majority's rationale, however, there is no identifiable point at which the government's detention of a traveler's computer becomes unreasonable.  Customs officials could continue to hold the computer as they seek to confirm or

10

dispel their non-existent suspicion, and in the process, indefinitely deprive the individual of the use of his liberty and property interests. See *Place*, 462 U.S. at 708. In short, contrary to this Court's prior decisions, "anything goes." Cf. *Cotterman*, 637 F.3d at 1070.

While there is no reasonable expectation that one's luggage will be free from search at the border, a traveler as "a reasonable expectation that his property will not be searched in a manner that requires it to be taken away from him for weeks or months, unless there is some basis for the Government to believe that the property contains contraband." *Id*. at 1085. The seize-then-search framework invented by the Cotterman majority turns the Fourth Amendment on its head, leaving the courts with no way to determine whether the length of a detention is reasonable. Such indefinite seizures of personal property interfere with a traveler's possessory and liberty interests and, even at the border, exceed the scope of a permissible investigative detention.

## III. Authorizing a General Computer Forensic Search without Suspicion is Abhorrent to the Fourth Amendment and is Therefore Always Conducted in a "Particularly Offensive Manner"

In *Ramsey*, the Supreme Court explicitly refrained from deciding "whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out." 431 U.S. at 618

11

n.13.  The Court pointed directly at two cases – *Kremen v. United States*, 353 U.S. 346 (1957), and *Go-Bart Importing Co. v. United States*, 282 U.S. 344 (1931) – to illustrate what such an unreasonable search might look like.  Both *Kremen* and *Go-Bart* involved an "exhaustive" or "general exploratory search in the hope that evidence of a crime might be found."  *Kremen*, 353 U.S. at 347; *Go-Bart*, 282 U.S. at 458.  The Court found both searches unconstitutional.  An unrestricted computer forensic search is akin to such "general searches" and is equally abhorrent to the Fourth Amendment.  See *United States v. Comprehensive Drug Testing*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc) ("CDT III"); *In re Application of the U.S.*, 770 F. Supp. 2d 1138, 1151 (W.D. Wash. 2011).

In *Kremen*, the Supreme Court held that the seizure of the entire contents of a home for an in-depth search was too exhaustive, even if some of materials seized may have been relevant evidence in a trial.  353 U.S. at 247.  And in *Go-Bart*, the Court condemned "a general and apparently unlimited search" in which law enforcement seized all papers on the premises in the hope of uncovering some evidence of a crime.  282 U.S. at 358.  As the *Go-Bart* Court explained, such "general searches" are antithetical to the Fourth Amendment:

> Since before the creation of our government, such
> searches have been deemed obnoxious to fundamental
> principles of liberty. They are denounced in the

12

>constitutions or statutes of every State in the Union.
>The need of protection against them is attested alike
>by history and present conditions.

*Id.* at 357 (internal citations omitted).

An exhaustive, forensic search of a computer, without any articulable suspicion of illegal activity to circumscribe the scope of the search is a "general search" like those held unconstitutional in *Kremen* and *Go-Bart*. This view wins support from this Court's decision in *CDT III*, finding that broad searches of electronically stored information present "a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." 621 F.3d at 1176. Applying *CDT III* to a warrant application seeking authorization to search "every bit of data contained in each digital device seized" from a residence, one lower court recently found that such a search was contrary to the Fourth Amendment and "akin to the revenue officers in colonial days who scoured 'suspected places' pursuant to a general warrant." *In re Application of the U.S.*, 770 F.Supp.2d at 1151; see also *United States v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1998) (reiterating that "courts must take care to ensure that [a suspicionless contraband] search is not subverted into a general search for evidence of crime," and emphasizing the "vast potential for abuse" and intrusion "into the privacy of ordinary citizens").

13

The private nature and vast quantity of information that may be contained on a computer, combined with customs agents' broad mandate to enforce hundreds of laws, is a recipe for unconstitutional general searches. See *United States v. $124,570 U.S. Currency*, 873 F.2d 1240 (9th Cir. 1989) (condemning a search justified by the need to ensure air traffic safety because it was used for unrelated, general law enforcement purposes). Computers are fundamentally different from other types of property that travelers may carry across the border. They may contain immense amounts of data, detailing more information about a person's life and activities than could ever be gleaned from rummaging through a suitcase. Conducting a general forensic search of a traveler's computer will reveal innocent and intensely personal information with no connection to any crime. Such information is commonly stored on personal computers, *id.*, and it is highly unlikely that customs agents would discover contraband "and no other arguably 'private' fact." *United States v. Hanson*, No. CR 09-00946, 2010 WL 2231796 (N.D. Cal. June 2, 2010) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)).

"[F]or most people, their computers are their most private spaces." *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (en banc) (Klienfeld, J. dissenting). They are "not just repositories of data" but "access points, or portals, to other digital devices and data" that contain one's "most sensitive

14

information," including medical records, intimate or embarrassing correspondence, reading or viewing habits, and sexual proclivities. *In re Application of the U.S.*, 770 F. Supp. 2d at 1145. They also store information of which the user is unaware or marked for deletion, making a forensic search "boundless" by nature. *Id*. at 1145-46. This is precisely the kind of exhaustive, general search that the Supreme Court condemned in *Kremen* and *Go-Bart*.

Although in *Arnold* this Court previously upheld the suspicionless border search of a computer, the initial search in that case involved browsing through two folders visible on the defendant's desktop containing images of nude women, and a further search revealed what appeared to be child pornography. 533 F.3d at 1005. Only after these searches did agents seize the computer for a full forensic search. Similarly, in *Seljan*, this Court found it reasonable for customs officials to suspicionlessly "scan" international correspondence for evidence of illegal activity, but stopped short of deciding whether the Fourth Amendment prohibited reading such materials without suspicion. 547 F.3d at 1004.

By contrast, the customs agents' scan of the files on Mr. Cotterman's computer failed to yield any indication of illegality. Nonetheless, they seized Mr. Cotterman's computer and shipped it nearly 170 miles to a government laboratory for an

15

exhaustive search to determine whether he had violated any one of innumerable criminal laws enforced by U.S. Customs. *Cotterman*, 637 F.3d at 1070. Under the panel's decision, there is nothing to prohibit officials from repeating this procedure for every person traveling across the border with a computer or electronic storage device. Indeed, there is nothing in the majority opinion to curb the Orwellian scenario envisioned by Judge Kozinski in which the "federal government decide[s] to read every letter, every e-mail, every diary, every document that crosses our borders, in order to increase the overall level of law enforcement by investigating crimes mentioned or documented in these writings." *Seljan*, 547 F.3d at 1015 (Kozinski, J., dissenting).

The panel's decision to sanction such broad and invasive searches without reasonable suspicion and without any limit on the duration, subject matter, or scope of the search calls out for review en banc. The suspicionless seizure and forensic search of a traveler's computer in the hope of discovering "some evidence of any crime," *Cotterman*, 637 F.3d at 1086 (Fletcher, J., dissenting), is nothing short of a general search repugnant to the Fourth Amendment. It is a fishing expedition, which, like the searches in *Kremen* and *Go-Bart*, is inherently offensive in manner.

16

**CONCLUSION**

The *Cotterman* panel's decision to sanction the seizure of a traveler's computer for the purpose of conducting a forensic search without any suspicion is unprecedented and raises serious constitutional concerns. Amici respectfully request the Court grants Mr. Cotterman's petition for rehearing *en banc*.

DATED:  September 19, 2011

Respectfully submitted,


 s/ *David M. Porter*
DAVID M. PORTER
Counsel for *Amici Curiae*

Additional counsel:

Malia N. Brink
Director of Institutional Development & Policy Counsel
National Association of Criminal Defense Lawyers
1660 L St. NW, 12th Floor
Washington, D.C.
(202) 465-7624

Hanni M. Fakhoury
Staff Attorney
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333 ext. 11

17

No. 09-10139


IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT


UNITED STATES OF AMERICA,      )
                               )  D.C. No. 4:07-cr-01207 RCC CRP
          Plaintiff-Appellant, )
                               )  District of Arizona
     v.                        )
                               )
HOWARD WESLEY COTTERMAN,       )
                               )
          Defendant-Appellee.  )
_____)


**BRIEF FORMAT CERTIFICATION PURSUANT
TO CIRCUIT RULE 29-2(c)(2)**

     Pursuant to Ninth Circuit rule 29-2(c)(2), I certify that
this brief is in a 14-point proportionally spaced typeface, is
double-spaced and contains 3,742 words.

Dated:  September 19, 2011

                         Respectfully submitted,


                          s/ *David M. Porter*
                         DAVID M. PORTER
                         Counsel for *Amici Curiae*


iv

No. 09-10139


IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | D.C. No. 4:07-cr-01207 RCC CRP |
| Plaintiff-Appellant, | ) | |
| | ) | District of Arizona |
| v. | ) | |
| | ) | |
| HOWARD WESLEY COTTERMAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

I hereby certify that on September 19, 2011, I
electronically filed the foregoing Unopposed Motion for Leave to
File Brief Amici Curiae in Support of Defendant-Appellee's
Petition for Rehearing En Banc and Brief Amici Curiae of the
National Association of Criminal Defense Lawyers and the
Electronic Frontier Foundation in Support of Defendant-Appellee's
Petition for Rehearing En Banc with the Clerk of the Court for
the United States Court of Appeals for the Ninth Circuit by using
the appellate CM/ECF system.

Service on all parties will be accomplished by the appellate
CM/ECF system.

DATED:  September 19, 2011


 s/ *David M. Porter*
DAVID M. PORTER
Counsel for *Amici Curiae*