**C.A. No. 09-10139**
Published Opinion Filed March 30, 2011
(Tallman, Rawlinson, JJ.; B. Fletcher, J., dissenting)

D. Ct. No. CR 07-01207-TUC-RCC

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

HOWARD WESLEY COTTERMAN,

Defendant-Appellee.

ON APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

-------------------------------------------------------------
**RESPONSE TO PETITION FOR REHEARING EN BANC**
-------------------------------------------------------------

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Appellate Chief

CARMEN F. CORBIN
Assistant U.S. Attorney
405 West Congress, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Attorneys for Appellant

Date Electronically Filed: November 14, 2011

# I.  TABLE OF CONTENTS

Page

I.   Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

II.  Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

III. Statement of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV.  Statement of the Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

      A.   Nature of the Case; Course of Proceedings. . . . . . . . . . .   1

      B.   Statement of Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

      C.   Ninth Circuit's Panel Decision . . . . . . . . . . . . . . . . . . .   5

V.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      A.   The Defendant's En Banc Petition Should Be Denied
          Because The Panel Opinion Is Consistent With Supreme
          Court And Circuit Precedent . . . . . . . . . . . . . . . . . . . . . .   6

      B.   The Panel Opinion Was Correctly Decided. . . . . . . . . . .   10

VI.  Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

VII. Certificate of Compliance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

VIII. Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

## II.  TABLE OF AUTHORITIES

<u>CASES</u>

*Kam-Almaz v. United States*,
    96 Fed.Cl. 84 (Fed.Cl. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Arnold*,
    533 F.3d 1003 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*United States v. Cardona*,
    769 F.2d 625 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Cotterman*,
    637 F.3d 1068 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 10-17

*United States v. Flores-Montano*,
    541 U.S. 149 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Montoya de Hernandez*,
    473 U.S. 531 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Ramsey*,
    431 U.S. 606 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Sahanaja*,
    430 F.3d 1049 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Thirty-seven Photographs*,
    402 U.S. 363 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Whiting*,
    781 F.2d 692 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

## **STATUTES**

18 U.S.C. § 2252(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2256(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1073. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1462(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1465. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2251(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **RULES**

19 C.F.R. § 162.21.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. App. P. 35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5-6, 10

## III.  STATEMENT OF COUNSEL

Pursuant to Rule 35 of the Federal Rules of Appellate Procedure, the United States hereby responds to the defendant's petition for en banc rehearing.  En banc rehearing is not warranted in this case because the panel's decision is consistent with Ninth Circuit and Supreme Court precedent and was correctly decided.  The panel properly reversed and remanded the district court's decision and did not overlook or misapprehend any point of law.  Rehearing is unwarranted and unnecessary, and the defendant's petition should be denied.

## IV.  STATEMENT OF THE CASE

### A.    Nature of the Case; Course of Proceedings

On June 27, 2007, a Tucson, Arizona grand jury charged the defendant in an indictment with various child pornography offenses.  (ER 264-69.)  He was charged with: two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a),(e) and 2256(2); transportation and shipping, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) and 2256(2); importation and transportation of obscene material, in violation of 18 U.S.C. §§ 1462(a), 1465, 2252(a)(1),(2) and (b)(1); and flight to avoid prosecution, in violation of 18 U.S.C. § 1073.  (ER 264-69.)

1

Significant portions of the evidence were obtained through a search of the defendant's laptop computer that was seized at the Lukeville, Arizona Port of Entry (POE) at the U.S./Mexico border. The defendant filed a motion to suppress evidence seized from his computer. (ER 252-63.) After hearing evidence and argument, the district court granted the defendant's motion to suppress, finding that the search was an "extended border" search that required reasonable suspicion, and that reasonable suspicion was lacking here. (ER 3-16, 1-2.) With Solicitor General approval, the government appealed. On March 30, 2011, this Court reversed and remanded, holding that the district court erred in suppressing the evidence that was lawfully obtained during a border search. *United States v. Cotterman*, 637 F.3d 1068, 1083 (9th Cir. 2011).

**B.     Statement of Facts**[1]

The published opinion accurately states the facts of this case. A brief review of the facts shows that on Friday, April 6, 2007, the defendant and his wife applied for admission into the United States from Mexico at the Lukeville POE in Arizona. (ER 3.) Customs and Border Protection (CBP) officers referred the Cottermans to secondary inspection based on information they received from an intelligence unit

---

[1] The government incorporates all facts and argument set forth in its prior appellate briefs and filings.

2

that targets convicted and registered sex offenders who travel abroad regularly. (ER 64-65.) While at secondary inspection, record checks confirmed that the defendant was convicted in 1992 in California state court on two counts of use of a minor in sexual conduct, two counts of lewd and lascivious conduct upon a child, and three counts of "child molest-inhabited dwelling." (ER 249-51.) The secondary inspection revealed that the defendant and his wife possessed, among other things, a digital camera and two laptop computers. (ER 4.) A preliminary search of one of the laptops by CBP Officer Alvarado revealed some password-protected files. (ER 4.)

The defendant and his wife left the Lukeville POE late in the afternoon on April 6, 2007. (ER 4.) The camera and laptops were retained for forensic examinations (ER 4), and Acting Resident Agent in Charge Craig Brisbine transported the items from the Lukeville POE to the Immigration and Customs Enforcement (ICE) Office in Tucson (ER 70). Brisbine delivered the items to computer forensic examiner John Owen at the ICE office in Tucson at approximately 10:00 p.m. that same night. (*Id.*) Owen checked the items into evidence and began his forensic examination the next day, Saturday, April 7th. (*Id.*)

Over the course of the weekend, there was repeated telephonic contact between ICE agents and the Cottermans about the status of the examinations. (ER 71-73.) On Saturday, the forensic examination of the camera was completed with negative

3

results. The Cottermans responded to the ICE office in Tucson on Saturday afternoon and took possession of the digital camera.

On Sunday, April 8th, the forensic examination of the laptop computer belonging to the defendant resulted in the discovery of approximately 75 child pornographic images in unallocated clusters. (ER 4.) There were also numerous password-protected .zip files in folders on that same hard drive. ICE agents contacted the defendant on his cell phone and asked him to come to the ICE office the next day, Monday, April 9th, to assist the forensics examiner in completing the examination and to return his laptop to him. (App's Op. Br. 8.) The defendant agreed to come to the office; however, on Monday, he instead boarded an Aeromexico flight from Tucson to Hermosillo, Mexico, with a final destination of Australia. (ER 75.)

On April 11, 2007, Owen was able to access the 23 password protected .zip files on Cotterman's computer. He found approximately 378 images and eleven video files of child pornography. (*Id.*) Approximately 360 of the 378 images of child pornography and all eleven videos depicted the same nude or partially nude female, approximately seven to ten years old, engaged in various sexual acts. (*Id.*) In a number of the images, an older man, who appeared to be the defendant, was touching and manipulating the minor female's genitals and pubic area. Further analysis revealed the presence of an additional 1206 images of child pornography on the same

4

hard drive, as well as approximately 309 stories of sexual abuse and acts of incest involving minors. (Op. Br. 9.) On April 25, 2007, law enforcement authorities identified and interviewed the minor female victim. (Op. Br. 10.)

On September 8, 2007, Australian law enforcement authorities arrested the defendant in Australia, pursuant to a United States provisional arrest warrant. (Op. Br. 11.) The defendant was then extradited to Arizona.[2]

## C.   <u>Ninth Circuit's Panel Decision</u>

In a published opinion, the majority (<u>J. Tallman</u>; J. Rawlinson) reversed and remanded, holding that the district court erred in suppressing the evidence lawfully obtained from the defendant's laptop computer during a border search. The majority rejected the notion that reasonable suspicion is required to continue a search, initiated

---

[2] The defendant alleges that the panel opinion contained factual errors. Specifically, he asserts that: (1) more than one password protected file was found on Cotterman's laptop at the POE; and (2) that ICE forensic examiner Agent Owen did not have a laptop that was capable of performing the forensic examination. (Pet. 2-3.) Not only are factual disputes insufficient to justify en banc review, Fed. R. App. P. 35, but these facts were correctly reflected in the panel's opinion. First, the opinion notes that "many of Cotterman's files were password protected," *Cotterman*, 637 F.3d at 1071, a fact expressed in the magistrate's report and recommendation and not altered in the district court's order (ER 1-2, 4). Second, the majority correctly states the capability of Owen's laptop, yet finds that it is not constitutionally relevant to the analysis of the case. *Cotterman*, 637 F.3d at 1082 n.16. Finally, the defendant's various other factual claims are incorrect (Pet. 3-4); the panel correctly stated that Agent Owen began examining the defendant's laptop on Sunday. *Cotterman*, 637 F.3d at 1072.

at the border, to a secondary site. *Cotterman*, 637 F.3d at 1079, 1083. It concluded that, so long as the property has not been cleared for entry into the United States and remains in the control of the government, "any further search is simply a continuation of the original border search – the entirety of which is justified by the Government's border search power." *Id.* at 1079. The dissenting judge (J. B. Fletcher) would have affirmed. The defendant filed a petition for en banc (not panel) rehearing. On September 23, 2011, this Court ordered the government to respond to the petition.

## V. <u>ARGUMENT</u>

A.    <u>THE DEFENDANT'S EN BANC PETITION SHOULD BE DENIED BECAUSE THE PANEL OPINION IS CONSISTENT WITH SUPREME COURT AND CIRCUIT PRECEDENT.</u>

En banc review is not warranted under Fed. R. App. P. 35, particularly because the panel's opinion is consistent with all relevant Ninth Circuit and Supreme Court precedent. *See Cotterman*, 637 F.3d at 1074-84 (citing Supreme Court and Ninth Circuit authority). Because the opinion does not conflict with any decisions of the Supreme Court and this Court, the defendant's en banc petition should be denied.

The defendant argues that the panel opinion conflicts with circuit and Supreme Court precedent because it upholds "a seizure where a search reveals no suspicion of wrongdoing . . . ." (Pet. 6-7.) He asserts that the opinion conflicts with *United States*

6

*v. Cardona*, 769 F.2d 625 (9th Cir. 1985) and *United States v. Thirty-seven Photographs*, 402 U.S. 363 (1971). The defendant's assertion is incorrect.

Citing *Thirty-seven Photographs*, 402 U.S. at 376, the defendant maintains that "the Supreme Court has been careful to predicate its assertions about the reasonableness of seizures upon some prior recognition of illegality or contraband." (Pet. 7.) He also notes that in *Cardona*, "this Court . . . affirmed suppression of checks photocopied during the search as an 'illegal seizure' because the checks were not known to be contraband when they were copied." (Pet. 7.) The panel opinion here, however, does not conflict with the holdings in these cases. The defendant's laptop here was merely detained while it was being searched by Customs for entry into the United States. In fact, in *Cardona*, this Court found that the agent's detention of the photocopies *after* the border search was complete was unlawful; it did not suggest that it was improper for the agent to detain the contents of the package while the border search was still occurring, nor did it suppress the agent's observations made during the search. 769 F.2d at 629.

Although he does not explicitly say so, the defendant seems to suggest that the majority's opinion conflicts with *United States v. Sahanaja*, 430 F.3d 1049 (9th Cir. 2005) and *United States v. Whiting*, 781 F.2d 692 (9th Cir. 1986). (Pet. 5.) He asserts that "if continuous government control of an item *ipso facto* resolved the

7

issue, this Court could have invoked that" in *Sahanaja* and *Whiting*, but "did not do so." *Id.* The defendant's analysis is incorrect, but in any event, the facts in *Sahanaja* and *Whiting* are not analogous to this case. First, *Sahanaja* involved an item that was searched *after* it had been cleared by Customs, not before. *Sahanaja*, 430 F.3d at 1051-52. Here, the officers never cleared the defendant's laptop from Customs, and the defendant was aware that the border search remained ongoing. Second, *Whiting* involved a non-Customs search that occurred before a package reached the border. *Whiting*, 781 F.2d at 693-95. It was not a routine border search by Customs agents, but instead was a pre-border search conducted by a non-Customs agent for purposes of furthering a criminal investigation. *Id.* The panel correctly determined that the search here was a lawful border search, and the opinion does not conflict with Supreme Court or Ninth Circuit precedent.

Nor does the opinion conflict with other circuit precedent. The defendant argues that the opinion conflicts with *Kam-Almaz v. United States*, 96 Fed.Cl. 84 (Fed.Cl. 2011), because "the Federal Claims Court explicitly found that property seizures at the border are unjustified absent 'reasonable cause to suspect a violation of law.'" (Pet. 8, citing *Kam-Almaz,* 96 Fed.Cl. at 89.) However, *Kam-Almaz* involved a civil complaint filed by an international traveler who claimed that his computer was damaged while in the possession of Customs. 96 Fed.Cl. at 86-87.

8

Although the court did observe that the seizure of the plaintiff's computer would have been unlawful and unauthorized if the agent did not have "reasonable cause" to believe that a violation of the law occurred, this holding was based on a federal regulation, 19 C.F.R. § 162.21, and was not a Fourth Amendment holding. *Id.* at 89. The court went on to note that it "does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." *Id.* Thus, *Kam-Almaz* is inapposite.

The defendant and the amici spend much time in their briefs arguing that the border search exception is unconstitutional and how the suspicionless search of a computer and other electronics during a routine border search violates the Fourth Amendment. (Pet. 1, 6, 10-11, and 18-19; Amicus Brief, The Constitution Project 3-5, 6-12; Amicus Brief, NACDL 5-9, 11-16.) They assert that electronic media is "qualitatively different" from other property due to the type and volume of information they can contain. (Amicus Brief, The Constitution Project 3.) However, these points merely rehash arguments already rejected by this Court in *United States v. Arnold*, 533 F.3d 1003, 1006 (9th Cir. 2008) (petition for rehearing en banc denied on July 10, 2008), *cert. denied*, 129 S.Ct. 1312 (2009) (holding "that reasonable

9

suspicion is not needed for customs officials to search a laptop or other personal electronic storage devices at the border").[3]

The panel opinion does not expand the border search exception, as suggested by the defendant. (Pet. 11-12.) Rather, the majority correctly found that the search here was a lawful border search, a conclusion consistent with Supreme Court and Ninth Circuit precedent. *See also Cotterman*, 637 F.3d at 1074-75 (citing *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004), and other cases). (*See also* Op. Br. 15-41; Rep. Br. 3-24) (providing analysis and discussing cases).

## B.    THE PANEL OPINION WAS CORRECTLY DECIDED.

### 1.    The Panel Correctly Recognized That There Was a Single Border Search and Detention That Required No Reasonable Suspicion.

Not only is the panel opinion consistent with Supreme Court and circuit precedent, but it was correctly decided. The defendant has failed to show that the panel wrongly decided an issue of exceptional importance. Fed. R. App. P. 35.

In his petition, the defendant focuses most of his argument on the idea that his laptop was unlawfully "seized" without suspicion. (Pet. 4-11, 18-19.) This argument, however, is incorrect and was properly rejected by the panel.

---

[3] The defendant did not argue to the panel, nor does he argue here, that *Arnold* was wrongly decided, and such an argument would not be preserved. In any event, *Arnold* was correctly decided, and the panel opinion correctly relies on *Arnold* and is not in conflict with it.

The defendant argues that the government conducted two separate border searches, one at the POE and one in Tucson, separated by a suspicionless "seizure" of the defendant's laptop. (Pet. 4, 6.) This characterization of the search of the defendant's laptop is incorrect. As noted by the panel opinion, the forensic analyst's examination of Cotterman's laptop was simply a continuation of the lawful border search initiated at the border and did not implicate any heightened expectation of privacy. *Cotterman*, 637 F.3d at 1077-79.[4]

The opinion correctly notes that the detention of the defendant's laptop without reasonable suspicion for further inspection was allowed. *Id.* at 1076 n.9 (also citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). As this Court has already held, no particularized suspicion is required to search a laptop during a border search. *Arnold*, 533 F.3d at 1008; *Cotterman*, 637 F.3d at 1083 (same, citing *Arnold* and *Montoya de Hernandez*).[5] The defendant's laptop was simply detained

---

[4] The search of the defendant's laptop was not an extended border search, because the laptop was not cleared by Customs to enter the United States before it was searched. (*See* Op. Br. 34-41; Rep. Br. 8-15) (presenting a complete analysis of this issue); *see also Cotterman*, 637 F.3d at 1076-79 (citing cases).

[5] The majority properly rejected the dissent's suggestion that computer forensic searches should always require reasonable suspicion. *See, e.g., Cotterman*, 637 F.3d at 1084 (dissent) ("The problem is that the government seized Cotterman's laptop so it could conduct a computer forensic search, a time consuming and tremendously invasive process, without any particularized suspicion whatsoever."); *id.* at 1086 (continued...)

11

for the duration of the lawful border search initiated at the border. Indeed, the defendant does not contest the legality of conducting a suspicionless detention of property to conduct a border search. He states that travelers expect to have their personal possessions detained or "seized" while a "thorough border search" is conducted. (Pet. 6.) He asserts, however, that once his laptop was taken to Tucson for further inspection, the once lawful detention of his property became an unlawful "seizure," suggesting that the difference between a lawful detention of property incident to a border search and an unlawful suspicionless seizure is governed by the amount of distance at the time of the search.

However, as the panel correctly ruled based on circuit and Supreme Court authority, time and distance do not determine the character of a border search. *Cotterman*, 637 F.3d at 1076-78 (citing cases); *see also id.* at 1076 ("Cotterman himself concedes, albeit reluctantly, that had the Government elected to transport its personnel and specialized computer forensic equipment to the border to perform its

---

[5](...continued)
(dissent) ("Given the exhaustive nature of computer forensic searches, I would hold that such searches are conducted in a particularly offensive manner unless they are guided by an officer's reasonable suspicion that the computer contains evidence of a *particular* crime.") (emphasis in original; internal quotations omitted). *See also id.* at 1080, 1083, and n. 14 (majority opinion) (rejecting notion that reasonable suspicion is required to conduct computer forensic examination during border search); *id*. at 1084 n. 18 (majority opinion) (noting that dissent's arguments are foreclosed by *Flores-Montano* and *Arnold*).

12

search, the border search doctrine would likely have applied. The sticking point is whether the inherent power of the Government to subject incoming travelers to inspection before entry also permits the Government to transport property not yet cleared for entry away from the border to complete its search. Cotterman claims that it does not. We cannot agree."). The panel correctly concluded that Customs conducted one lawful continuous border search of that item, not "two searches" requiring separate justification, as the defendant contends. *Cotterman*, 637 F.3d at 1079, 1083-1084.

2.    The Panel Correctly Found That the Search Was Reasonable.

The panel correctly concluded, as did the district court, that the search was reasonable under the Fourth Amendment. *Cotterman*, 637 F.3d at 1080-84; ER 8, 10. The defendant argues that the majority failed to fully analyze the "reasonableness" of the search by focusing only on the "manner" in which it was conducted. (Pet. 12.) This argument is misplaced because the opinion fully analyzed whether the agents acted reasonably in conducting the search. *Cotterman*, 637 F.3d at 1079-84.

Border searches by their very nature are reasonable under the Fourth Amendment, and, as noted above, require neither a warrant, probable cause, nor articulable suspicion. *Montoya de Hernandez,* 473 U.S. at 538; *United States v. Ramsey,* 431 U.S. 606, 616-18 (1977). The reasonableness of a search depends on

13

the facts and circumstances of the particular search. *Montoya de Hernandez*, 473 U.S. at 537. Courts must balance any intrusion resulting from the search with the legitimate governmental interest to determine reasonableness under the Fourth Amendment. *Id.* at 544.

The defendant is essentially asking this Court to ignore the district court's factual finding below, correctly adopted by the panel, that the Department of Homeland Security acted reasonably in conducting the search. (ER 8, 10); *Cotterman*, 637 F.3d at 1083. The search was neither destructive nor offensive, as the panel found. *Cotterman*, 637 F.3d at 1080-83 (citing cases). The panel also noted that the timing of the search was not unreasonable. *Id.* at 1082-83. Indeed, the forensic examiner worked with reasonable dispatch, over the weekend, to complete the search and found the child pornography within forty-eight hours. The computer forensic search was not "indefinite" nor unreasonable (Pet. 4); rather, it was completed very quickly, as the panel found, particularly when compared to the typical forensic search, as Owen noted. (ER 127); *see also Cotterman*, 637 F.3d at 1082-83. The panel correctly observed:

> [T]he Supreme Court has recognized that the through search of property under the border search power does not implicate an individual's privacy expectation – even if the individual cannot depart from the border without that property. . . . Quite to the contrary, the Court has indicated that travelers should expect intrusions and delay in order to

14

satisfy the Government's sovereign interest in protecting our borders. . . ."

*Cotterman*, 637 F.3d at 1078 (citations omitted). Customs acted reasonably in detaining the *property* for further review, but letting the Cottermans leave the POE. Indeed, the defendant's suggested alternative – i.e., that Customs should have kept the Cottermans at the border for days while it conducted a forensic analysis of the laptops and camera at the border – is actually less reasonable.[6]

The defendant and amici suggest that en banc review should be granted because the opinion could have undesirable ramifications in other cases by allowing for indefinite seizures and searches of property at the border. However, this claim overlooks the majority's clear statement that it is not authorizing "*indefinite deprivations*" and that the result could change in the future if the circumstances were altered. *Cotterman*, 637 F.3d at 1079 n.13 (emphasis in original). Indeed, the opinion specifically states that the government does not have carte blanche:

> We by no means suggest that the Government has carte blanche at the border to do as it pleases absent any regard for the Fourth Amendment. . . . Rather, we continue to analyze the Government's conduct on a case-by-case basis to determine whether searches or

---

[6] The panel made the same observation. *Cotterman*, 637 F.3d at 1083 ("[O]ur common sense and experience inform us that the decision to transport the property to the laboratory, instead of transporting the laboratory to the property, resulted in a shorter deprivation."); *id*. at n. 17 (noting that transporting the laboratory to the property would also have inconvenienced the Cottermans).

seizures are effectuated in such a manner as to render them unreasonable.

*Id.* at 1079 (internal citation omitted). The majority's decision was appropriately limited to the facts. *Id.* at 1079 n.13. Thus, the opinion is not the sweeping decision that the defendant makes it out to be in order to try to justify en banc review.

The defendant also encourages this Court to adopt rules not required by the border search doctrine or the Fourth Amendment. For example, he encourages this Court to adopt a rule "requiring a traveler to cooperate by providing unencrypted data or passwords," but this simply is not reasonable or mandated by the Fourth Amendment.[7]

The defendant's various arguments were properly rejected by the panel because the search of his laptop was a lawfully-conducted border search. The panel also correctly recognized that travelers do not have a constitutionally protected expectation that their property will not be removed from the border, and that adopting the defendant's position would severely hamper the government's ability to fulfill its duty to protect the borders of the United States, particularly where an item may require further testing or examination to ascertain its contents:

---

[7] This proposal is similar to one the defendant suggested to the panel, namely, that the government should be required to request and accept offers of assistance by travelers during routine border searches of their property. (Ans. Br. 57-58.) The panel properly rejected the defendant's invitation. *Cotterman*, 637 F.3d at 1080.

16

> [W]e reach the very heart of Cotterman's claim: that travelers somehow have a constitutionally protected expectation that their property will not be removed from the border for search and, therefore, the Government must either staff every POE with the equipment and personnel needed to fully search all incoming property or otherwise be forced to blindly shut its eyes and hope for the best absent some particularized suspicion. We find this position simply untenable.

*Cotterman*, 637 F.3d at 1077; *see also* Op. Br. 42-46 (discussing issue). The panel correctly determined that a proper border search had been conducted in this case and that no reasonable suspicion was required. *Cotterman*, 637 F.3d at 1083.

## VI. <u>CONCLUSION</u>

The panel opinion was correctly decided and is consistent with decisions from the Supreme Court, this Court, and other circuits. For the foregoing reasons, the government respectfully asks this Court to deny the defendant's petition for en banc rehearing.

> ANN BIRMINGHAM SCHEEL
> Acting United States Attorney
> District of Arizona
>
> CHRISTINA M. CABANILLAS
> Appellate Chief
>
> *s/ Carmen F. Corbin*
>
> CARMEN F. CORBIN
> Assistant U.S. Attorney

## VII.  CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 35-4 AND 40-1 FOR CASE NO. 09-10139

I certify that pursuant to Circuit Rule 40-1, the attached response to petition for rehearing en banc is:  (check applicable option)

  X   Proportionately spaced, has a typeface of 14 points or more and contains
       4028  words (petitions and answers must not exceed 4,200 words).

**or**

\_\_\_   Monospaced, has 10.5 or fewer characters per inch and contains \_\_\_\_\_words
       or \_\_\_\_\_ lines of text (petitions and answers must not exceed 4,200 words or
       390 lines of text).

**or**

\_\_\_   In compliance with Fed. R. App. P. 32(c) and does not exceed 15 pages.


November 14, 2011\_\_\_\_\_           *s/ Carmen F. Corbin*
Date                              Signature of Attorney

18

## VIII.  **CERTIFICATE OF SERVICE**

I hereby certify that on this <u>14th</u> day of November, 2011, I electronically filed the  Appellant's Response to Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  William J. Kirchner, Esq., counsel for defendant-appellant, and other participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


<u>*s/ Carmen F. Corbin*</u>
CARMEN F. CORBIN
Assistant U.S. Attorney

19